JOHN McCROWELL *v.* MAYOR AND ALDERMEN OF BRISTOL, GEORGE C. PILE *et al.*

MUNICIPAL CORPORATION. *Nuisance. Liability of Mayor and Aldermen.* An action cannot be maintained against the corporate authority of a town, upon the allegation that a regularly licensed tipler was permitted to keep his saloon within the corporate limits of the town, in such a manner as to become a nuisance, to the damage of the plaintiff, whose residence was upon adjoining property. *A fortiori,* such action cannot be maintained against the mayor and aldermen as individuals, upon the allegation that they aided in procuring the license.

FROM SULLIVAN.

Appeal in error from the Law Court at Bristol. NEWTON HACKER, J.

VANCE & WOOD, BUTLER & McDOWELL, W. V. DEADERICK and YORK & FULKERSON for Crowell.

W. D. McCROSKEY, S. H. LEA and N. M. TAYLOR for Mayor and Aldermen.

McFARLAND, J., delivered the opinion of the court.

This action is by McCrowell against the mayor and aldermen of the town of Bristol and George C. Pile and five others. The declaration is in substance, that the plaintiff was the owner of a house and lot on Main street in the town of Bristol, which he occupied as a family residence. While so occupying his residence one John W. Jett procured the mayor and aldermen of the town to issue a license to him to retail spirituous liquors within the limits of said town during the year 1879. Whereupon said Jett erected a "grocery or saloon" on Main street of said town, adjoining the plaintiff's residence, and the said Jett, in the management and conduct of said saloon and the sale of liquors therein, so conducted the same that he permitted violent, obscene and disorderly conduct in and around his said grocery and in the street in front and in the lot in rear thereof, to the great annoyance of the plaintiff and his family, so much so that he was compelled to remove from his said residence; and he further avers that he made. repeated applications and complaints to said board of mayor and aldermen of said disorderly conduct and requested them to abate said saloon or grocery as a nuisance, and offered himself to prosecute any process for that purpose, but said mayor and aldermen, although they thus had full notice, failed and neglected to abate the nuisance, but knowingly permitted said Jett to continue the same, and the said George C. Pile and the other individuals sued were present aiding and abetting in the issuance

of said license and the permission and continuance of said nuisance.

A demurrer was filed by the defendants and sustained by the court and the plaintiff has appealed. There can hardly be any doubt that it was properly sustained as to the individuals sued. To aid and abet another in procuring a license to retail spirituous liquors is no violation of law, and it certainly cannot be maintained that a civil action will lie at the suit of any individual against such aiders and abettors in the event the retailer subsequently permits disorderly conduct in his house. It is not shown how said defendants aided and abetted in the permission and continuance of the nuisance; it is not averred that they were themselves guilty of the disorderly conduct. It is intimated in argument that said defendants constitute the board of mayor and aldermen, or part of them; if so, it is clear that their acts in that capacity, so far as there is any allegation against them, will not render them liable; but it is not averred that they constituted the board of mayor and aldermen. But the question remains as to the action against the *corporation* as such.

It is settled in this State that an indictment may be maintained against a municipal corporation for permitting a street to be so out of repair as to become a public nuisance. *Barksdale* v. *Mayor*, 5 Hum., 153; *M. & A. of Chattanooga* v. *The State*, 5 Sneed, 578; *The State* v. *M. & A. of Murfreesboro*, 11 Hum., 217; and also that the mayor and aldermen are individually liable to indictment. *Hill* v. *The State*, 4 Sneed,

443.    And also that an indictment may be maintained for permitting a slaughter-house within the corporate limits of the town—*The State* v. *Corporation of Shelbyville,* 4 Sneed, 177—it being, as it was held, the duty and within the power of the corporate authorities to abate nuisances of this character.

The business of retailing spirituous liquors is authorized and regulated by law, being one of the occupations classed as privileges.    A tax is to be paid to the State and county and a license to be issued by the county clerk, and a bond and oath to be taken to prevent disorderly conduct.    When the retailer proposes to conduct the business within the limits of an incorporated town, the corporate authorities are authorized to collect an additional tax.    So that it is clear a saloon or grocery is not a nuisance *per se;* if at all, it becomes so by the manner in which it is kept.    The authority and power of the government of an incorporated town in general to abate nuisances of a certain character may be readily conceded, as for instance, an obstruction in one of the streets, or others of like character, but how a town or city government is to abate a nuisance consisting in the disorderly manner in which a drinking saloon is kept, is not so clear.    Section 4914 of the Code, declares: "Houses of ill-fame, kept for the purpose of prostitution and lewdness, gambling-houses, or houses where drunkenness, quarreling, fighting, or breaches of the peace are carried on or permitted to the disturbance of others, are nuisances."

"Upon conviction the court may order the nuisance

to be abated by the sheriff, at the expense of the defendant." Sec. 4915. This means when the party is indicted and convicted for permitting the nuisance. There is no power in the town government to indict or try for criminal offenses, although they may sue for and recover penalties for violating town ordinances or by-laws.

As to his character of nuisance, therefore, we do not see how they are to be abated before trial and conviction. Although it is undoubtedly the duty of the police officers to suppress disorderly conduct, the town government has no power to indict or try for the criminal offense.

It is certainly clear that the town authorities could not, without judicial proceedings, declare the saloon a nuisance and proceed to abate it. See Dillon on Municipal Cor., secs. 308 and 312. The right to proceed by criminal prosecution in the courts of the State was open to the plaintiff, and it is not perceived that the corporate authorities had any special duty to perform in this respect. Nor is it seen what duty they have neglected.

In Judge Dillon's standard work it is said: "Unless there be a valid contract creating, or a statute declaring the liability, a municipal corporation is not bound to provide for and secure a perfect execution of its by-laws, and is not responsible in a civil action for any neglect of duty of its officers in respect to their enforcement, though such neglect result in injury to private persons which would not otherwise have happened." Sec. 754. The most that can be said is,

that the police officers of the town neglected their duty in suppressing the disorderly conduct complained of, and it is clear the corporation is not liable for their neglect. Sec. 773.

Again, the neglect of duty for which an action will lie, must be a plain absolute duty which pertains to the corporation as such and from which it is to derive special benefit in its corporate capacity, and not merely such duties as it exercises for the benefit of the public. See Dillon M. C., sec. 773, *et seq.*

Without undertaking to further define the principle upon which corporations are held liable for neglect of duty, and where the liability does not attach—perhaps a difficult task—it is sufficient to say that no cause of action is alleged in this case. It has been said that each case must depend upon its own facts, and it is not easy to see that the principle involved in the decisions can be reconciled.

Let the judgment be affirmed.