HALE *v.* CITY OF KNOXVILLE *et al.*

(*Knoxville,* September Term, 1949.)

Opinion filed December 17, 1949.

Rehearing Denied February 10, 1950.

Nathan Orris Hale, pro se.

Poore, Cox, Baker & McAuley and Arthur D. Byrne, of Knoxville, for Parkrite Auto Park, Inc., and others.

Richard L. Carson, of Knoxville, for City of Knoxville.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This is a suit in negligence for personal injuries which plaintiff alleges he sustained when, as a pedestrian, he slipped and fell on an ice-covered public sidewalk in the City of Knoxville, on the north side of Cumberland Avenue, about 60 feet west of Gay Street. The defendants named in the declaration were (1) the City of Knoxville, hereinafter referred to as "the City", and (2) the operators of a public parking lot at the entrance to which the accident occurred. As such operators, the declaration named two private corporations, Parkrite Auto Park, Inc., and Knoxville Parkrite, Inc., and three individuals, E. L. Wallace, C. W. Ennis, Jr. and D. M. Carothers, doing business as Parkrite Auto Parks, Ltd. The declaration does not specify, nor distinguish the interests of the corporations and individuals in the parking lot and its operation, and we will refer to both hereinafter, as "Operators."

The City and the Operators filed separate special demurrers to all counts of the declaration. The Trial Judge, after writing and filing a careful opinion with citation of authority, which has been of great aid to the Court, sustained the demurrers and dismissed the suit. The plaintiff has assigned errors and appealed.

The declaration is in three counts. By the first, a common-law count, plaintiff charges that the defendants negligently caused his injuries by causing ice to form on the sidewalk upon which he fell and broke his arm. The pertinent part of this count is as follows:

"A heavy snow fell within the city limits of Knoxville, Tennessee, on February 20, 1947, and covered the streets and sidewalks of said city to a depth of two inches, or more. It was below freezing weather. *The defendants flushed and washed the snow off the streets and sidewalks in the business district and along and upon West Cumberland* Avenue, Knoxville, Tennessee, within the City limits of Knoxville, Tennessee, from the northwest corner of South Gay Street and West Cumberland Avenue including the entrance to the parking lot on the northwest side of West Cumberland Avenue. Some of the water which the defendants used to flush and wash off the snow on West Cumberland street and sidewalk froze and formed a very slick coating of ice in the West Cumberland Avenue entrance to said parking lot which caused a continuing, menacing, dangerous condition to exist in said parking lot entrance by their failure to remove the ice formed thereon. The defendants had knowledge of this dangerous condition, but took no steps to remedy it, or by the exercise of reasonable diligence, should have known the same when they sprinkled or flushed the snow off the street and sidewalk in the presence of weather conditions below freezing forecast at the time.

"As a direct and proximate result of the negligence and carelessness of the *defendants* in creating, permitting and maintaining said icy condition on the parking lot entrance on West Cumberland Avenue without barricade or lights to warn the traveling public of its presence, plaintiff, around 9 A. M., February 21, 1947, while he was walking east on said West Cumberland Avenue, where he had a right to be, and while he was in the exercise of all due care and caution for his own safety,

slipped and fell on the coating of ice just as he stepped into the entrance to said parking lot." (Italics ours.)

█ Obviously, though the pleader uses the plural, "defendants" in the foregoing count, the action detailed can refer only to the City and a performance by it, of a governmental function in flushing and washing the streets and sidewalks of the downtown business district. This count states no cause of action against the Operators, and the statement made creates no liability on the City, since it was in the performance of a governmental function. "Since this was clearly a failure to perform a governmental function, it could not be the basis for liability in tort. *Irvine* v. *Chattanooga,* 101 Tenn. 291, 294, 47 S. W. 419; *Conelly* v. *Nashville,* 100 Tenn. 262, 46 S. W. 565; *McCrowell* v. *Mayor* & *Aldermen,* 73 Tenn. 685, 690. Charge of nonenforcement of its ordinances, without more, is an insufficient predicate for the City's liability in tort. Dillon, Municipal Corporations (5th Ed.) vol. 4, Section 1705, p. 2086; McQuillan, Municipal Corporations (2d ed.) vol. 7, Revised, Section 2964, p. 179; 43 C. J., Municipal Corporations, p. 1030, note 4; *Harman* v. *City of New York,* 148 App. Div. 61, 131 N. Y. S. 1032; *Herman* v. *City of New York,* 148 App. Div. 61, 131 N. Y. S., 1032." *City of Knoxville* v. *Hargis,* 184 Tenn. 262, 268-269, 198 S. W. 2d 556, 558.

██ By the second count of the declaration, plaintiff alleged that his injuries were negligently caused by the breach on the part of the Operators and non-enforcement on the part of the City, of a certain section of the Knoxville City Code, being Section 36 of Chapter 38, which makes it the duty of the abutting property owner or occupant to "remove or cause to be removed from the sidewalks adjoining his premises, all ice, snow, etc." The

failure of the City officials to enforce this ordinance, gave rise to no liability against the City to pedestrians, *Knoxville* v. *Hargis, supra*, and the breach of the ordinance by the Operators, did not render them liable to third persons. In a recent case, *Harbin* v. *Smith*, 1934, 168 Tenn. 112, 76 S. W. 2d 107, where the suit was against an abutting owner for failure to keep sidewalks in repair, speaking through MR. JUSTICE COOK, this Court said in the course of the opinion:

"The weight of authority and of sound reason is that a municipality cannot shift its primary liability for an omission of duty to keep streets and sidewalks reasonably safe, and statutes and ordinances requiring abutting property owners to maintain sidewalks adjoining their premises do not operate to impose liability directly upon such owners for injury resulting to travelers in consequence of the municipality's omission of duty. Annotation, 41 A.L.R., p. 217; *Hay* v. *City of Baraboo*, 127 Wis. 1, 105 N. W. 654, 3 L.R.A., N. S., 84, 115 Am. St. Rep. 977; *Hanley* v. *Fireproof Building Co.*, 107 Neb. 544, 186 N. W. 534, 24 A.L.R. 382; *City of Rochester* v. *Campbell*, 123 N. Y. 405, 25 N. E. 937, 10 L.R.A. 393, 20 Am. St. Rep. 760. . . .

"We think it clear that the duty imposed by this ordinance was for the benefit of the municipality and not for the benefit of individuals composing the public. They were already sufficiently secured in their right to have safely passable sidewalks through the obligation imposed by the municipal charter, and indemnity was provided for any damages that might be sustained as a result of the municipality's negligence through the common-law liability of the corporation. *City of Knoxville* v. *Felding*,

153 Tenn. [586], 590, 285 S. W. 47.'' *Harbin* v. *Smith,*
168 Tenn. 112, 116, 117, 76 S. W. 2d 107, 109.

By the third, which is another count under rules of the
common law, plaintiff charged that the Operators, ''. . . .
carelessly and negligently allowed a water spigot, which
was located about 85 feet west of the northwest inter-
section of West Cumberland Avenue and South Gay
Street, near the sidewalk entrance on West Cumberland
Avenue to said parking lot, to stand open from which a
large quantity of water streamed and ran down across
the West Cumberland Avenue entrance to said parking
lot, said defendants, City of Knoxville, carelessly and
negligently allowed said water from said spigot to run
across and upon said West Cumberland Avenue entrance
to said parking lot, and to accumulate thereon, and freeze
and remain as an obstruction on said sidewalk entrance
on West Cumberland Avenue to said parking lot.''

■■■ This statement is wholly insufficient to charge
the City for a number of reasons. The declaration states
that the unusual cold and snow fell upon Knoxville on
February 20, and that the defendant, at 9:00 a.m., on the
morning of February 21, suffered his injuries. There
was no allegation of notice, actual or constructive, to
the City. This was indispensable. *City of Knoxville* v.
*Felding, supra.* The statements of this count of the dec-
laration could not create a jury question of constructive
notice by lapse of time, or notoriety on account of other
accidents, etc. *City of Knoxville* v. *Hargis, supra.* And
as to the allegation of negligence in the third count
against the defendant Operators, there is no showing
who left the hydrant open, or for how long it had run,
and there is no allegation that the flow of water from the
hydrant, and the creation of the icy condition of the side-

walk was wilful or malicious. As abutting property owners or occupants, the defendant Operators owed pedestrians no duty to clean the sidewalks. *Harbin* v. *Smith, supra,* and many supporting cases cited in *Harley* v. *Fireproof Bldg. Co.,* 107 Neb. 544, 186 N. W. 534, 24 A.L.R. 387, *Sewall* v. *Fox,* 98 N.J.L. 819, 121 A. 669, 28 A.L.R. 1360, 28 Ariz. 207, 236 P. 701, 41 A.L.R. 212. And even if the Operators, by reasonable use of their premises, had increased the slippery condition, they would not be liable to a pedestrian who fell. *Massey* v. *Worth,* 9 W. W. Harr., Del., 211, 197 A. 673. Compare 40 C.J.S., Highways, Section 258, p. 304.

By analysis of each count separately, it is clear that the declaration was demurrable, but viewing the declaration as a whole, there are two fatal defects which justified the Trial Judge in dismissing the suit: (1) A misjoinder of parties defendant, (2) An irreconcilable repugnance between the statement of the causes of action in counts one and three.

While apparently deploring the rule and its technicality, Prosser in his work on Torts (1941 Ed.) Section 109, p. 1099, states that Courts refuse to allow a City and a property owner responsible for the condition of the sidewalk to be sued together. A number of cases are cited in support. The reason given in some of these authorities is the distinction that must be made between the rules of liability of a municipal corporation on the one hand, and of a private owner or occupant on the other. Also, that there may be a situation where one of the defendants must indemnify the other, either on account of the primary liability of the municipal corporation under the common-law, or on account of a change in the rule of the common-law and a shifting of that primary

liability by ordinance to the property owner. *Dutton et ux. v. Borough of Lansdowne,* 198 Pa. 563, 48 A. 494, 53 L.R.A. 469, 82 Am. St. Rep. 814; *Bennett v. Fifield,* 13 R.I. 139, 43 Am. Rep. 17; *Morris v. Woodburn,* 57 Ohio St. 330, 48 N. E. 1097; *Wiest v. City of Philadelphia,* 200 Pa. 148, 49 A. 891, 58 L.R.A. 666. In *Schneider v. City Council of Augusta,* 118 Ga. 610, 45 S. E. 459, the basis of the action was a defective grading in the sidewalk. The suit was filed against the City only, and under Georgia practice, the City vouched into the suit, the property owner. The importance of the decision in the present case was that the Court specifically held that the abutting owner and the City were not joint tort-feasors. Other cases to the same effect are reported in *Bonte v. Postel,* 109 Ky. 64, 58 S. W. 536, 51 L.R.A. 187; *Dutton v. Borough of Lansdowne,* 198 Pa. 563, 48 A. 494, 53 L.R.A. 469, 82 Am. St. Rep. 814.

▇ In the first count of the declaration it is averred by the plaintiff that the Defendant City caused plaintiff's injury while performing its governmental function of flushing the streets and sidewalks of the downtown business district of Knoxville, and with equal definiteness, in the third count of the declaration, it is averred that the defendant Operators, by leaving an open hydrant and causing thus a flow of water over the sidewalk, were responsible for the plaintiff's injury. Clearly, these two statements are irreconcilable and repugnant. The general principle is well settled that where two or more parties are acting each for himself, in producing a result which injures the plaintiff, they cannot be held jointly liable for the acts of each other. *Swain v. Tenn. Copper Co.,* 111 Tenn. 430, 451, 78 S. W. 93; *Blaisdell v. Stephens,* 14 Nev. 17, 33 Am. Rep. 523.

"The questions which this court is called upon to determine in these cases are not merely of pleading, but also of liability, or when one tort-feasor is liable for damages done by others to the same party, for the test of joint liability is whether each of the parties is liable for the entire injury done. If they are joint tort-feasors, each one is responsible for the damages resulting from the acts of all the wrongdoers, and they may all be sued severally or jointly; but, if they are not joint tort-feasors, each is liable only for the injury contributed by him, and can only be sued in a separate action therefor. These are most important questions, often far-reaching in their consequences, and deserve the most careful consideration. [111 Tenn. at page 436, 78 S. W. 93.]

. . . . . . .

"It is in every sense and by every definition a separate wrong. [111 Tenn. at page 440, 78 S. W. 95.]

". . . the mere union and blending of consequences will not have the effect to make torts originally several joint. [111 Tenn. at page 441, 78 S. W. 95.]

. . . . . .

"It is said in the text of 14 Ency. of Pl. & Pr., p. 1108, 'Where a nuisance results from the act of several persons acting severally, they cannot be joined as defendants in actions for damages;' and in volume 15, p. 562, of the same work, it is said further that 'persons who act severally and independently, each causing a separate and distinct injury, cannot be sued jointly, even though the injuries may have been precisely similar in character, and inflicted at the same time. A joint tort is essential to the maintenance of a joint action. If separate and distinct wrongs, in no wise connected by the ligament of

502

a common purpose, actual or implied by law, the wrong-doers are liable only in separate actions, and not jointly in the same action.' " 111 Tenn. at page 445, 78 S. W. at page 96. *Swain* v. *Tenn. Copper Co.,* 111 Tenn. 430, 436, 440, 441, 445, 78 S. W. 93.

"The rationale of the doctrine is that courts will not permit suitors to solemnly affirm that a given state of facts exists from which they are entitled to particular relief, and then afterwards affirm, or assume, that a contrary state of facts exists from which they are entitled to inconsistent relief." *Grizzard* v. *Fite,* 137 Tenn. 103, 108-109, 191 S. W. 969, 970, L.R.A. 1917D, 652.

The Tennessee definition of joint tort-feasors, which has been frequently quoted and often applied is: "When a tort is committed by two or more persons jointly, by force directly applied, or in the pursuit of a common purpose or design, or by concert, or in the advancement of a common interest, or as the result and effect of joint concurrent negligence, there is no doubt but that all the tort-feasors are jointly and severally liable for all the damages done the injured party, and that these damages may be recovered in joint or several actions, although the wrongful conduct or negligence of some may have contributed less than that of others to the injury done." *Swain* v. *Tenn. Copper Co.,* 111 Tenn. 430, 438, 78 S. W. 93, 94.

Using that definition as a yardstick on the facts in the present case, it is clear from the declaration as a whole, that at no time did the City and the Operators act jointly "by force directly applied, or in the pursuit of a common purpose or design," nor did they, from the facts stated in the declaration, ever so concur in negligent ac-

tion or omission to act, that they could be held jointly and severally liable for damages to the plaintiff.

■■■ It is well settled that a declaration, wherein the counts are repugnant and irreconcilable, will be dismissed on demurrer. *Henderson* v. *Boyd & Caswell,* 85 Tenn. 21, 1 S. W. 498; *Bible* v. *Palmer,* 95 Tenn. 393, 394, 32 S. W. 249; *Grizzard* v. *Fite, supra; Stamper* v. *Venable,* 117 Tenn. 557, 561, 97 S. W. 812.

Under the foregoing authorities and for the reasons stated, the Trial Judge was correct in sustaining the demurrers and the judgment is affirmed.

All concur.

### On Petition to Rehear

■■■ In our former opinion, being reluctant to dismiss the case without providing for a hearing on the merits, we carefully analyzed each count of the declaration and undertook seriatim to point out the defects in each count. We then undertook to point out the fatal defect in the entire cause of action, which was that the pleader had undertaken to join the City of Knoxville and the operators of the parking lot and had alleged facts which conclusively, showed that the defendants were not joint tort-feasors. "A joint tort is essential to the maintenance of a joint action." *Swain* v. *Tenn. Copper Co.,* 11 Tenn. 430, 445, 78 S. W. 93, 96.

Under the allegations of the declaration the defendant City was not liable because the flushing of its streets was the performance of a governmental function. *Conelly* v. *Nashville,* 100 Tenn. 262, 266, 46 S. W. 565, and under the allegations of the declaration, the operators of the parking lot, who, it was charged, had left a hydrant running, and so caused an icy condition of the sidewalk, were

not liable to third persons for a violation of the City ordinance in that regard. *Herbin* v. *Smith,* 168 Tenn. 112, 76 S. W. 2d 107.

Clearly, the act of leaving the hydrant running and the act of flushing the City streets were not concerted nor joint acts, but were entirely separable in time and agency. The petition to rehear contains absolutely nothing to excuse this clear misjoinder of parties, nor the attempt to charge in a single action, two defendants who are clearly not joint tort-feasors. There is, therefore, nothing in the petition to rehear, even if we admit its criticism as valid, which we do not, which would change the result reached. The fundamental defect in the declaration was the misjoinder and other matters aside, that of itself necessitated the dismissal of the action.

Petition to rehear denied.

All concur.