# PATRICK A. MURRAY v. CITY OF NASHVILLE et al.

## —299 S. W. (2d) 859.

Middle Section.   November 30, 1956.

Petition for Certiorari denied by Supreme Court April 1, 1957.

Barksdale, Hudgins & Osborn, Nashville, for plaintiff in error.

Frank S. King, Jr., Nashville, for City of Nashville.

Bailey, Ewing & Powell, Nashville, for Edenfield Electric Co.

Waller, Davis & Lansden, Nashville, for Bush Building Co.

I

SHRIVER, J.   The plaintiff, Patrick A. Murray, sued the defendants for $35,000, damages and for $15,000 punitive damages for personal injuries incurred when he fell while attempting to walk across Union Street at a point a short distance East of its intersection with 6th Avenue North in Nashville, Tennessee.

The declaration is in two counts.   The first count alleges that the plaintiff stepped on a broken concrete gutter adjacent to the sidewalk, lost his footing and tripped and fell on a dangerous ditch which was located some 20 inches, more or less, from the curbing on the North side of Union Street, and extended across the path of all pedestrians who had to cross said intersection.   It further alleges that the ditch was placed and left in Union Street as a result of a street lighting system being installed during the latter part of the summer months of 1954 and at the time of the accident.   Said installation was made pursuant to a contract between the Electric Power Board of the City of Nashville and Edenfield Elec-

tric, Inc., which concern contracted with Bush Building Company for the actual excavation of the ditch and guttering.

The second count alleges a violation of Chapter 32, sec. 33, of the Nashville City Code, which provides that every person who shall dig or cause to be dug any excavation in a street shall have it guarded with a barrier or danger signal, it being alleged that no such barrier or danger signal was erected at the place of the accident in conformity with the provisions of said section of the City Code.

All the defendants filed pleas of general issue and the case was tried before Judge Richard P. Dews and a jury in the First Circuit Court of Davidson County and resulted in a jury verdict and judgment for the defendants.

After motion for a new trial was overruled the case was duly appealed in error to this Court.

## II

### The Facts

There is no essential conflict in the material evidence.

The plaintiff and one other witness, a young man named Giovanni Zasso, are the only two persons who witnessed the accident.

The plaintiff, who was 88 years old at the time of the accident, was an active man who was accustomed to walk from his home out on State Street to the Court House where he worked. On Sept. 10, 1954, at about 5 o'clock P.M. he was walking westwardly on the north side of Union Street. When he reached a point about seven feet east of the east line of the pedestrian crosswalk which is

marked at the intersection of Union Street and Sixth Avenue, he stopped at a light post which was near the edge of the curb, put his right hand on said post and looked to his left, or eastwardly, on Union Street, and seeing no approaching vehicles, he stepped from the sidewalk to the street, whereupon, his foot slipped, or he tripped and fell, breaking his hip.

The witness Zasso was across the street and saw plaintiff as he was in the act of falling, and went to his aid. With another person he helped plaintiff to Davitt's store on Sixth Avenue, where he was later picked up by an ambulance and carried to the hospital.

Plaintiff, after relating that he stood on the pavement and put his hand on the light post and looked to see if the way was clear, stated,

"So I stepped out and my feet went out from under me and I went down. I didn't really know what happened to me until I tried to get up and couldn't and I tried to pull myself up."

When asked to describe the condition of the street at the point at which he fell, he stated,

"The street condition? Well, I am sorry, no, I couldn't do that. I didn't look down to see if there was anything there, I just simply looked to see if I had the way clear, and when I did step my foot went out from under me and I fell." (Tr. p. 10)

On cross-examination he testified:

"Q. You don't know what your foot slipped on and why it was that you slipped? A. No, no, I didn't look down to see but I know it was something, I slipped there."

Plaintiff testified that he knew, at the time, that construction of the city street lighting program was under way and that there were ditches in many of the city streets. In fact, the plaintiff had fallen only nineteen days before on Seventh Avenue where there had been an excavation, but, fortunately, was not seriously injured.

The evidence shows that plaintiff fell in the street about seven feet east of the east line of the marked crosswalk which is at the intersection of Union Street and 6th Avenue North, and was lying on his back in the street with his head towards the sidewalk and his feet towards the center of the street.

There was some dirt or other material against the sidewalk, adjacent to the light post where plaintiff started to cross the street. This dirt or material was piled up almost level with the top of the sidewalk and extended out about a foot, or a little more from the sidewalk toward the center of the street.

A ditch about one foot wide had been excavated some twenty inches from the curb and running parallel to it, where a cable had been laid in the installation of the street lights, but this ditch had been refilled and there was a hard surface over it which was about an inch and a half, or possibly two inches, below the surface of the street. In other words, the ditch, which was about a foot wide and about twenty inches from the curb, represented a depression of only of about one and one half inches below the surface of the street.

There is no direct testimony by the plaintiff, or by the other man who witnessed the accident, as to exactly what caused the plaintiff to fall. Neither plaintiff, Mr. Murray, nor the witness Zasso, knew whether Mr. Murray's

foot landed on the small pile of debris that was next to the curb causing him to fall, or whether he stumbled on the depression that was an inch and a half or two inches deep, or, in fact, what caused him to lose his footing as he stepped from the curb to the street.

The witness Zasso who, as was said hereinabove, was the only one other than the plaintiff to witness the accident, testified as follows; (Tr. p. 47)

"Q. Did you see him as he fell or after he was stretched out? A. Well, I was looking and I saw somebody falling, but I wasn't there, I mean I wasn't looking when the particular accident happened at all.

"Q. You saw him on the corner there, is that right? A. At the corner. I don't know how it happened. I just saw him falling."

\* \* \* \* \* \*

(Tr. p. 48)

"Q. Would you describe that ditch, please sir? What sort of ditch was it? A. Why, it was a ditch, I guess it was about a foot or foot and a half.

"By the Court:

"Q. From the sidewalk? A. Straight down the street.

"By Mr. Osborn:

"Q. A foot or a foot and a half from the edge of the sidewalk? A. From the sidewalk.

"Q. Twelve to eighteen inches? A. The ditch was just about a foot and a half wide and was covered up at this particular time about an inch in depth.

"Q. In depth? When you say 'covered up', do you mean filled up? A. Yes, sir."

The evidence showed that the defendant, Edenfield Electric Co., had completed its work on about August 12, 1954, and the defendant, Bush Building Co., had completed its work in the construction of the light system on Union Street when it filled the ditch back up to within one and one half inches of the street surface, as required by its contract.

### III

1. *Plaintiff's assignment of error No. 1*, is to the effect that the trial Court erred in excluding evidence of sec. 33, Chapter 32 of the Nashville City Code, the pertinent provisions of which are as follows:

"Sec. 33. *Barriers and danger signals.* 'Every person who shall dig or cause to be dug any excavation in or adjoining any highway, street, alley, sidewalk or other public place, shall have the same guarded in the daytime with a substantial barrier or danger signal, sufficient and suitable to warn persons travelling on or using such highway street, alley, sidewalk or other public place, of the presence of such excavation and against danger. (1941, c. 34, sec. 1.)"

The trial Court excluded evidence offered by the plaintiff as to the above ordinance and held that there was no such excavation at the point where the accident occurred as to require a barricade or signals pursuant to same.

As is seen from the discussion of the evidence hereinabove, there was no existing excavation at the time and at the point in question. The ditch that had been dug in the street had been filled up to within an inch and a half,

or, at most, two inches of the surface previous to the time of the accident, and, consequently, was not such a situation as was contemplated in the ordinance above quoted.

■ It is to be further noted that the Courts of Tennessee have held in a number of cases that the existence of trivial depressions in a street are not such as to constitute actionable negligence against a municipality.

In Rye v. City of Nashville, 25 Tenn. App. 326, 156 S. W. (2d) 460, it was said that, in order to impose liability for damages for harm caused by a dangerous thing, the thing must be dangerous according to common experience, and that the probability that a concrete sidewalk block about two inches higher than the adjacent block will cause injuries to pedestrians using the sidewalk with reasonable care, is too remote to impose on the city the burden and expense of preventing such injuries, or the duty to guard against them.

In Riddell v. Great A. & P. Tea Co., 192 Tenn. 304, at p. 309, 241 S. W. (2d) 406, at p. 408, it was stated:

"A recovery will not be allowed because of the existence of trivial holes or depressions. Rye v. City of Nashville, 25 Tenn. App. 326, 156 S. W. (2d) 460.

"No doubt the jury came to the conclusion that Mrs. Riddell could have walked through the depression in safety provided she was watching where she was walking."

Also see City of Memphis v. McCrady, 174 Tenn. 162, 124 S. W. (2d) 248.

■ We think there was no error in the action of the trial Court in excluding the evidence offered by plaintiff

with respect to the aforesaid ordinance, hence, assignment No. 1, is overruled.

2. *Plaintiff's assignment No. 2,* is to the effect that the trial Court erred in excluding evidence offered by the witness Zasso that there was no barrier where the plaintiff fell.

For the same reasons hereinabove set forth as to assignment No. 1, this assignment must fail. Also it is to be observed that the absence of the barricade which is complained of in assignment No. 2, was, in fact, proved by other evidence in the record.

It results that assignment No. 2, is overruled.

3. In *the third assignment* plaintiff asserts that the Court was in error in ruling that the condition of the street, as shown by the evidence, did not constitute a nuisance per se, and that plaintiff's action was grounded on negligence.

As was said in Davidson County v. Blackwell, 19 Tenn. App. 47, 82 S. W. (2d) 872,

"What constitutes a nuisance is a question of law for the Court, but whether an act, not a nuisance per se is a nuisance in fact is for the jury."

We are of opinion that the trial Court correctly held that the condition shown by the proof did not constitute a nuisance per se.

It could make no difference whether the Court let the case go to the jury on the question of liability of the defendants, for maintaining a nuisance in fact, growing out of negligence, or on the question of liability for neg-

ligence in creating a dangerous condition, since the issues of fact involved are the same as regards both questions.

See Llewellyn v. City of Knoxville, 33 Tenn. App. 632, 232 S. W. (2d) 568, wherein it was held that the failure of the trial Judge to allow the case to go to the jury on the nuisance count was not reversible error since the issues involved in the nuisance count and the negligence count were the same and the answer to these issues was necessarily the same.

Assignment No. 3, is overruled.

4. The fourth assignment asserts that it was error for the trial Court to charge the jury that sec. 82, Ch. 35, of the Nashville City Code, was applicable, and that a violation of this City ordinance by crossing, or attempting to cross, the street at any place, except in a marked crosswalk or intersection in the business district, constituted negligence per se.

In Carroll Blake Const. Co. v. Boyle, 140 Tenn. 166, at p. 178, 203 S. W. 945, at p. 948, the Court said,

"It is true the violation of a valid city ordinance is negligence per se, and it has been held by this court in several cases that where the acts of the defendant in violating the ordinance is the proximate cause of the injury suffered he is liable to the plaintiff. Schmalzried v. White, 97 Tenn. [36] 37, 36 S. W. 393, 32 L. R. A. 782; Adams v. [Cumberland] Inn Co., 117 Tenn. 470, 101 S. W. 428. For the same reason it follows that one who has been injured as the proximate result of his own violation of a valid ordinance is precluded from a recovery."

In City of Nashville v. Black, 142 Tenn. 397, 219 S. W.

1043, 12 A. L. R. 453, it was held that the violation of a city ordinance against turning a team in the middle of a block is negligence, and if proximately causing the driver's injury from falling when a wheel went into a hole in the street, it will prevent recovery.

In the Black case the plaintiff sued the city to recover for injuries sustained when he was thrown from his wagon when the wheel struck a defect in the street. The accident occurred while the plaintiff was turning his team in the middle of the block in violation of a City Ordinance. The trial Court instructed the jury that the ordinance was not applicable to the case on trial and that they should not consider it. The jury returned a verdict for the plaintiff, and, on appeal, the Court of Civil Appeals sustained the defendants assignment and held that the jury should have been permitted to consider the plaintiff's violation of the ordinance, and to determine whether or not his violation of the ordinance proximately contributed to his injuries. The Supreme Court affirmed the judgment of the Court of Civil Appeals and reaffirmed the statement in Carroll Blake Const. Co. v. Boyle, 140 Tenn. 166, 203 S. W. 945, to the effect that violation of a city ordinance is negligence per se, and one injured as the proximate result of such violation is precluded from recovery.

It is to be remembered that the plaintiff in the case at bar chose to cross the street at a point some seven feet east of the marked crosswalk and was injured as result of his fall at that point.

It is argued by counsel for plaintiff that the ordinance in question was enacted for the protection of citizens against the hazards of vehicular traffic on the streets and

that there was no connection between plaintiff's injuries and the purposes for which said ordinance was passed, therefore, the so-called violation by plaintiff was not negligence per se, or such negligence as would bar a recovery by him.

It seems that the decision in City of Nashville v. Black, supra, makes such a position untenable.

We think such a construction of the ordinance as that urged by plaintiff is too narrow.

The right of the City, under its police power, to regulate traffic on its streets, both as to vehicles and pedestrians, is too well settled to call for discussion.

The requirement that pedestrians, in the City's congested business district, cross the street at designated places, is not related, alone, to protection from automobiles and other vehicles, but has to do with directing the orderly movement of people as they congregate on the streets, often in large numbers.

Hence, we cannot agree with learned counsel for plaintiff that the ordinance does not apply in this case.

Thus assignment No. 4, must be overruled.

Counsel for defendant called attention to the case of Western Union Telegraph Co. v. Card, 8 Tenn. Civ. App. 294, where the facts are very similar to those in the case at bar.

In that case the plaintiff brought suit for injuries sustained by her when she fell over some tools obstructing the curbing of the street, which tools were placed there by city employees. The obstruction was plainly visible

and plaintiff admitted that she did not see them because she did not look where she was stepping.

Special Justice A. W. Chambliss in delivering the opinion of the Court, stated, 8 Tenn. Civ. App. at page 299,

"We think the facts of this case bring it within the rule * * * that, where the evidence shows without contradiction that the plaintiff was not only negligent, but that her negligence proximately contributed to the injury, her case is one for peremptory instructions."

In the instant case the jury found the issues in favor of the defendant and we feel compelled to hold that the verdict and judgment in the lower Court must be affirmed.

Felts and Hickerson, JJ., concur.