## CITY OF WINCHESTER

*v*

## JUDY PATRICIA FINCHUM

(*Nashville*, December Term, 1956.)

Opinion filed April 1, 1957.

·John F. Green, L. Fricks·Stewart and Pat B. Lynch, Winchester, for plaintiff in error.

Joe R. Hickerson, Jr., and Joe S. Bean, Winchester, for defendant in error.

·Mr. Chief Justice Neil delivered the opinion of the Court.

The defendant in error, Judy Patricia Finchum, recovered a judgment in the Circuit Court of Franklin County against the City of Winchester in the sum of $2,500, the same being for personal injuries received by her when the bicycle she was riding struck a defect in the sidewalk which threw her with great violence to the pavement. It was charged that this was a dangerous defect due to the defendant's negligence and was the proximate cause of her injuries.

The defendant filed a general plea of not guilty and also a special plea averring that the plaintiff at the time of the accident was violating an ordinance of the City

of Winchester which prohibited riding a bicycle upon the sidewalk and her act in so riding it was negligence *per se* and the proximate cause of her injuries.

An appeal was prayed and granted to the Court of Appeals where the judgment below was affirmed. We granted *certiorari* and the issues have been orally argued by counsel.

The assignments of error in the petition for *certiorari* are the same which the Court of Appeals had considered and overruled, (opinion by Presiding Judge Felts).

Inasmuch as we are in full accord with the opinion of the Court of Appeals upon these questions we here adopt the pertinent parts of it as the opinion of this Court. It reads as follows:

"There was a general verdict and judgment for plaintiff for $2,500. Defendant City appealed in error and insists that there was no evidence to support the verdict; that the undisputed evidence was that plaintiff was guilty of proximate contributory negligence; that the Trial Judge erred in the admission of certain evidence and in his charge to the jury; and that the verdict was excessive.

"In considering defendant's first point, we must look to all the evidence, construe it most strongly in favor of plaintiff, take as true that which tends to support her right, discard all countervailing evidence, and allow all reasonable inferences in her favor. *Tyrus v. Kansas City, Ft. S. & M. R. Co.*, 114 Tenn. 579, 86 S.W. 1074; *Smith v. Sloan*, 189 Tenn. 368, 376-377, 225 S.W. 2d 539, 227 S.W.2d 2.

''The evidence, so taken and construed, tended to prove; and the jury could reasonably have found, the following facts and circumstances as to the occurrence and the nature of plaintiff's injuries:—

''She was a child 12 years of age. She did not live in Winchester but was visiting there in the home of Mrs. Street, which was located on North High Street, a prominent residential street in the City. The accident happened about 10 a.m. on October 10, 1953. Plaintiff and Mrs. Street's daughter Helen were riding bicycles on the concrete sidewalk on North High Street, going from Mrs. Street's home southwardly toward the uptown section, plaintiff following the other little girl.

''The mishap occurred on the sidewalk where it was crossed by a driveway leading to the residence of Herman Atnip. At this point a sewer line had been placed under the sidewalk and a meter box had been set in the sidewalk, and a hole had been left under the concrete pavement. Four or five slabs of the concrete in the sidewalk where it was crossed by this driveway were broken through so that one looking through the cracks in the broken pavement could see dirt under it.

''It was broken up into fragments with 'rough jagged edges' and 'sharp pieces sticking up', said Mrs. Street. Another witness, Mrs. Webber, said: 'A. Well, it was just broken up and, of course, there was some rough jagged edges standing up. Q. How much above the normal level of the sidewalk? A. Well, I just couldn't judge, approximately it was a matter of inches, though'. This defect had existed for two years, and Atnip had tried to get the City to repair it. Cross-examined by the City's counsel as to why he sought to have it repaired

and whether it was dangerous, Atnip said: 'I told him (City Recorder) that if he didn't get it fixed up there somebody could get hurt'.

"Plaintiff did not know of this defect, and as she approached it on the bicycle, following the other little girl, she was looking ahead and did not see it. Describing the accident, she said: 'I was riding and when I hit that concrete I was thrown from my bicycle'—'Well, the piece I hit, it jarred me and I went over the handle bars'. Her face struck the pavement, tearing a gash in her forehead, cutting her nose in two, and knocking two of her front teeth back in her mouth.

"It appears that the City had passed two ordinances on July 19, 1912, one requiring abutting property owners to construct and maintain concrete sidewalks, and the other forbidding any person to ride a bicycle, velocipede, wagon, buggy, or automobile upon the sidewalk. It was proved, however, that this ordinance was not enforced but it was a common and constant practice for children to ride bicycles on the sidewalks in Winchester; that the city officials knew that the children habitually and customarily used the sidewalks as a playground for riding their bicycles.

"The general rule is that a city holds its public ways, not in its governmental, but in its proprietary or corporate capacity, and it owes an absolute duty to exercise reasonable care to keep its streets and sidewalks safe for use in the ordinary modes by persons exercising reasonable care. *City of Memphis v. McCrady*, 174 Tenn. 162, 164, 124 S.W.2d 248, [249]; *Vinson v. Fentress*, 33

Tenn.App. 359, 370, 232 S.W.2d 272; *City of Nashville v. Brown*, 25 Tenn.App. 340, 345, 157 S.W.2d 612 [615], and cases there cited.

 "This duty upon a city to use due care to maintain its streets and sidewalks is primary, nondelegatable, and cannot be evaded or avoided by the city by any act of its own. 'It (such duty) *rests primarily, as respects the public, upon the corporation,* and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others, by any acts of its own.' 4 Dillon, Municipal Corporations, (5th ed.), sec. 1720 pp. 3020-3022.

"This principle was applied in *Harbin v. Smith*, 168 Tenn. 112, 76 S.W.2d 107; *Vinson v. Fentress, supra;* and in *City of Knoxville v. Ferguson*, 34 Tenn.App. 585, 591, 241 S.W.2d 612, 615, where it was held that a city could not shift its primary liability to maintain its sidewalks to abutting property owners, by passing an ordinance to that effect. In the Harbin case, Judge Cook said:

   " 'The weight of authority and of sound reason is that a municipality cannot shift its primary liability for an omission of duty to keep streets and sidewalks reasonably safe, and statutes and ordinances requiring abutting property owners to maintain sidewalks adjoining their premises do not operate to impose liability directly upon such owners for injury resulting to travelers in consequence of the municipality's omission of duty' (citing authorities).

 "So, the City of Winchester could not, by the aforesaid ordinances, divest itself of its duty to the public to keep its sidewalks reasonably safe for their use in the ordinary modes. Of course, it could forbid the

riding of bicycles and other vehicles on such walks, but the intent of that ordinance was to protect pedestrians, not to relieve the City of the duty it owed such riders in common with all other members of the public in respect to such walks.

"That ordinance outlawed the riding of bicycles and other vehicles on the sidewalks, but it did not make such riders themselves outlaws, or put them beyond the protection of the law, or divest the City of the duty it owed them in common with all other members of the public to use due care to keep such walks reasonably safe for use by pedestrians.

"The City was not bound to keep its sidewalks safe for bicyclists, but was bound to keep them reasonably safe for pedestrians—bound to maintain such walks against defects which were so dangerous that they might reasonably be expected to cause injury to pedestrians; and it was liable for a breach of this duty causing injury to a user of the sidewalk, whether such user was a pedestrian or a bicyclist.

"The authorities generally hold, where a city permits the riding of bicycles on its sidewalks, that though it is not bound to keep such walks safe for such riding, it does owe to the riders the same duty it owes pedestrians to safeguard such walks against dangerous defects; and that a bicyclist may recover for injuries caused him by such a defect, provided he was not guilty of proximate contributory negligence. *Guidi v. Town of Great Barrington*, 272 Mass. 577, 172 N.E. 916; *Le May v. Oconto*, 229 Wis. 65, 281 N.W. 688, 118 A.L.R. 1019; *Arata v. Orleans Capitol Stores, Inc.*, 219 La. 1045, 55 So.2d 239; *Collins v. Philadelphia*, 227 Pa. 121, 75 A. 1028, 27 L.R.

A.,N.S., 909, 136 Am.St.Rep. 873-874, 19 Ann.Cas. 972, 973; Annotation, 118 A.L.R. 1023; 19 McQuillin, Municipal Corporations (3rd ed.) sec. 54.54; 7 Am. Jur. Bicycles, sec. 17, page 740.

"Where a child has been injured by a defect in the sidewalk while riding a bicycle thereon in violation of a city ordinance, some cases have denied recovery on the ground that the.city owed such child no duty to keep such walks reasonably safe for riding a bicycle thereon, and the view has been expressed that such a child was a trespasser to whom the city owed no duty. See cases cited in annotation 118 A.L.R. 1024-1025.

"For the reasons above stated, however, we think that the ordinance forbidding the riding of bicycles in Winchester did not abolish the City's duty to the children whom it permitted to ride on its sidewalks; that it cannot say they were trespassers; that it owed them the same measure of duty which it owed pedestrians; and that they were entitled to protection against such defects as would be actionable in case of injury to a pedestrian.

"We have numerous cases of injuries to pedestrians by defects in sidewalks. Some of the cases holding such defects actionable are: *Elrod v. Town of Franklin,* 140 Tenn. 228, 204 S.W. 298 (curb box projecting 2 or 3 inches above the surface of the sidewalk); *Osborn v. City of Nashville,* 182 Tenn. 197, 185 S.W.2d 510 (paint made sidewalk slick); *City of Knoxville v. Ferguson,* 34 Tenn. App. 585, 241 S.W.2d 612 (sidewalk made slick by a bottle of Lysol dropped thereon). See numerous cases collated in the annotation, 37 A.L.R.2d 1187, 1204-1211.

"On the other hand, some of the cases holding defects not actionable are: *Batts v. City of Nashville,* 22 Tenn.

App. 418, 123 S.W.2d 1099 (a hole tapering from 1 to 3 inches deep and 12 to 18 inches wide); *City of Memphis v. McCrady, supra* (concrete block projecting 2½ inches above the adjoining block); *Rye v. City of Nashville,* 25 Tenn.App. 326, 156 S.W.2d 460 (concrete block 2 inches higher than adjacent block).

■ "The question whether a defect is actionable is to be determined not alone from its height or its depth but from all the surrounding circumstances. As was said in *Batts v. City of Nashville, supra;* ' "It will not do to rest the rule upon inches only. That is a factor in arriving at the result, but the other conditions and surrounding circumstances must also be considered" *Johnson v.* [City of] *Eau Claire,* 149 Wis. 135 N.W. 481, 483'.

"In *City of Memphis v. McCrady, supra,* the Court said: 'In none of the cases is the height or depth of the obstruction made the test of negligence. Liability is dependent upon the breach of duty imposed by law upon municipalities to guard against dangerous obstructions on the sidewalk, and the municipality is liable when it appears that the obstruction constituted a danger from which injury might be reasonably anticipated'.

"Where the evidence is conflicting, or where the facts are undisputed but are such as to authorize different inferences as to whether a defect is a dangerous obstruction calculated to cause injury, the question is one of fact for the jury. *City of Memphis v. McCrady, supra,* 174 Tenn. 166, 124 S.W.2d 248; *Batts v. City of Nashville, supra,* 22 Tenn.App. 423, 123 S.W.2d 1099; *City of Nashville v. Brown,* 25 Tenn.App. 340, 347, 157 S.W.2d 612, [617]; *Osborn v. City of Nashville, supra,* 182 Tenn. 203, 185 S.W.2d 510.

"As we have seen, the defect in the case before us was that several slabs of the pavement were broken through their depth with 'rough jagged edges' and 'sharp pieces sticking up' a 'matter of *inches*' high, which was calculated to cause injury, on which somebody might 'get hurt'; and at least one of the pieces was sticking up so high that when plaintiff's bicycle struck it, it jarred her so that it threw her forward, over the handle bars, and violently upon the sidewalk.

"In the light of the foregoing authorities, and construing the evidence most favorably to plaintiff, as we must do, we think the question whether the defect was negligent and actionable was a question for the jury; that the jury could well find from the evidence that the City, by neglecting to repair the defect, was guilty of negligence which was the proximate or legal cause of plaintiff's injuries.

"It is strongly urged for defendant, however, that plaintiff was guilty, as a matter of law, of proximate contributory negligence barring her right of action, since she admitted that when injured she was riding the bicycle on the sidewalk in violation of the City ordinance, which was negligence *per se* and the proximate cause of her injuries.

"In this connection, we consider defendant's assignments of error based on the admission of evidence that it made no effort to enforce this old ordinance but permitted the children to make a custom of riding bicycles on the sidewalks. It is said that such evidence was inadmissible because even if defendant acquiesced in such

a custom, this could not repeal the law or justify its violation. *National Funeral Home v. Dalehite,* 15 Tenn. App. 482, 488.

"Nevertheless, we think it was proper to prove such acquiescence and custom as part of the conduct of the parties—as affording an inference that though plaintiff's conduct was negligence *per se,* it was not actually willful or wrongful, but was only what the City permitted other children to do and might reasonably have expected her to do. The jury might have inferred that if defendant had not permitted other children to do this, she would not have done it and would not have been injured.

"Thus such evidence was relevant to the issue of proximate cause and of whether plaintiff was guilty of contributory negligence. The jury may have inferred that she would not have been riding the bicycle on the sidewalk, and would not have been injured, but for defendant's conduct in permitting this practice by other children and in neglecting to repair this dangerous defect; and that her conduct was only a condition or circumstance attending her injury, and defendant's conduct was the proximate or legal cause of such injury.

"The fact that plaintiff, when injured, was violating the ordinance, and was thus guilty of negligence *per se,* would not bar her right of recovery unless her negligence was the proximate cause of her injury. *Holt v. Walsh,* 180 Tenn. 307, 313, 174 S.W.2d 657, [659]; *Sutherland v. Keene,* 29 Tenn.App. 303, 309, 203 S.W.2d 917, [920]; *Standridge v. Godsey,* 189 Tenn. 522, 532, 226 S.W.2d 277, [281]; *Adams v. Brown,* 37 Tenn.App. 258, 262-263, 262 S.W.2d 79, 80, 81.

"In each of those cases, it was held that though plaintiff was guilty of negligence *per se* in violating a statute, it was, nevertheless, a question for the jury whether he was barred by contributory negligence—whether his negligence was the proximate cause of his injury or a remote cause or a mere circumstance accompany such injury.

"In *Standridge v. Godsey, supra,* defendant's truck struck and killed plaintiff's intestate while he was walking on the right side of a bridge in violation of a statute requiring such a pedestrian to walk on the left side of the highway. The Trial Court had directed a verdict for defendant on the ground of deceased's contributory negligence. In reversing, our Supreme Court, speaking through Chief Justice Neil, said:

" 'If we should concede that the deceased was violating the law of the road, which is negligence *per se,* there remains the question of whether or not his fault was the proximate cause of the accident. By the weight of authority the contributory negligence of the plaintiff in violating the law of the road, or municipal ordinances regulating traffic, is not a complete defense unless it contributes to the accident as the proximate cause. Whether or not his fault was the proximate cause of the accident was the jury' (citing authorities).

"In *Adams v. Brown, supra,* plaintiff violated a statute by overtaking and attempting to pass another vehicle in an intersection of highways. It was held that though plaintiff was guilty of negligence *per se,* it was still a question for the jury whether such negligence constituted such proximate contributory negligence as to bar

the action. There, the Court, in an opinion by Presiding Judge McAmis, quoted approvingly from 38 Am.Jur., Negligence, sec. 214, in part as follows:

" ' "An act of the plaintiff, although unlawful, does not place him outside the protection of the law as to an injury sustained by him through the negligence of another, unless the unlawful act has some causal connection with the injury. Accordingly, no exception to the rule that contributory negligence must contribute proximately to the injury sustained by the plaintiff in order to constitute a defense in an action for negligence is made for the fact that the plaintiff's negligence consists in the violation of a statute or ordinance * * *. If the injured person's violation of an ordinance did not directly contribute to the injury, his unlawful conduct is not a defense to his action, even if he would not have been injured if he had not violated the ordinance. The distinction is between that which directly and proximately produces or helps to produce a result as an efficient cause and that which is merely a necessary condition or attendant circumstance of it." '

"So, upon the evidence and upon the foregoing authorities, we think the question of whether plaintiff's violation of the statute was such proximate contributory negligence as barred her right of action, was a question for the jury, and that there is ample evidence to support the verdict of the jury in her favor."

We think the foregoing opinion by the Court of Appeals is conclusive of the issues presented in the petition for *certiorari*. There is no merit in the assignments of error relating to the charge of the trial judge and his failure to charge certain special requests. They relate

to the alleged defect in the sidewalk and the contributory negligence of the plaintiff. The charge as to plaintiff's violation of the ordinance was not prejudicial to the City of Winchester. Whether or not the plaintiff's contributory negligence proximately caused the accident and injury was fairly submitted to the jury.

Finally contention is made by counsel for the petitioner that the case at bar is controlled by *City of Memphis v. Dush,* 199 Tenn. 653, 288 S.W.2d 713. The Court's opinion in that case (Burnett, Justice, dissenting) was based almost entirely upon *City of Memphis v. McCrady,* 174 Tenn. 162, 124 S.W.2d 248. Moreover we think it differs factually from the case at bar and should be confined to its own facts.

In *Batts v. City of Nashville,* 22 Tenn.App. 418, 123 S.W.2d 1099, the Court held that the question of whether a defect in a street or sidewalk is actionable is not determined by its height or depth, but that it is one factor in arriving at the result. In most, if not all, of these cases the courts in determining liability have followed the generally accepted rule that "an injury is not actionable if it was not foreseen, or could not have been foreseen or reasonably anticipated." 38 Am.Jur., p. 666, and cases cited. It was so applied in *City of Memphis v. McCrady, supra,* and other cases. But the rule is not controlling in every case since any number of factors and circumstances might be present and important on the question of liability. Nor is it fundamentally sound for the Court to hold that because the jury has by its verdict applied this "foreseeability" test, and found in favor of a plaintiff or defendant, that the question of legal liability is thereby foreclosed on appeal.

We cannot agree that the ruling of the Court in *City of Memphis v. Dush, supra,* controls the case at bar. It would serve no purpose for us to compare the defects in these cases and thus undertake to reach a legal conclusion. However, we have this important fact which clearly distinguishes the present case from the Dush case, viz. that the governing authority of the City of Winchester had actual notice of the alleged defect in the sidewalk, and was told that if it was not repaired some one would be injured. This dangerous condition had existed for two (2) years prior to the accident.

We find no error in the record, and the judgment of the Court of Appeals is affirmed.

TOMLINSON, BURNETT, and SWEPSTON, JUSTICES, concur.

PREWITT, JUSTICE, dissents.

PREWITT, JUSTICE, (dissenting).

I respectfully dissent from the majority opinion for the following three reasons:

First, the motion for a directed verdict should have been sustained for the reason that there was no actionable negligence on the part of the City. *City of Memphis v. Dush* 199 Tenn. 653, 288 S.W.2d 713; *City of Memphis v. McCrady,* 174 Tenn. 162, 124 S.W.2d 248; *Batts v. City of Nashville,* 22 Tenn.App. 418, 123 S.W.2d 1099; *Rye v. City of Nashville,* 25 Tenn.App. 326, 156 S.W.2d 460.

The injuries sustained occurred on the sidewalk where it was crossed by a driveway leading to the residence of Herman Atnip. At this point a sewer line had been placed under the sidewalk and a meter box had been set in the sidewalk, and a hole had been left under the con-

crete pavement. Four or five slabs of concrete in the
:: This defect had existed for about two years before the
sidewalk, where it was crossed by this driveway, were
broken through so that one looking at the broken pave-
ment could see dirt under it.

The owner of the driveway took a 2'' x 4'' piece of
timber and placed it over the four or five slabs of con-
crete that were cracked, and he testified that the lowest
place in the cracked place was only two inches lower than
the unbroken part of the driveway.

little girl was injured. The proof shows this a very pop-
ulous street in Winchester, and pedestrians had been
walking over the driveway for two years, night and day,
with no mishap. See 63 C.J.S. Municipal Corporations
sec. 807 p. 137 and cases therein cited.

For a second reason I think the motion for a directed
verdict should have been sustained because the injured
party was guilty of proximate contributory negligence,
and that her act in riding a bicycle upon the sidewalk
in violation of the ordinance of the City of Winchester,
was negligence *per se,* and was the proximate cause of
her injuries.

Third, because the reasoning of the majority opinion
virtually makes, for all practical purposes, the munici-
palities of Tennessee insurers of its sidewalks, and in
my opinion the majority opinion is a material departure
from the principles stated in *Batts v. City of Nashville,
supra; Rye v. City of Nashville, supra; City of Memphis
v. McCrady, supra, and City of Memphis v. Dush, supra.*
Though the facts in the present case are somewhat dif-
ferent from the above cited cases, yet the principles in-

volved are the same, and if we approve liability in cases against municipalities of this nature it will place an unwarranted burden on them.